1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  TERRY BLY,                                         CASE NO. C14-0254JLR

11                          Plaintiff,                 ORDER GRANTING IN PART
                                                       AND DENYING IN PART
12              v.                                     DEFENDANTS' MOTION TO
                                                       DISMISS
13  FIELD ASSET SERVICES, et al.,

14                          Defendants.

15                          **I.    INTRODUCTION**

16        Before the court is Defendants Ocwen Loan Servicing, LLC ("Ocwen") and

17  Deutsche Bank Trust Company's ("Deutsche Bank") motion to dismiss pursuant to

18  Federal Rule of Civil Procedure 12(b)(6).  (Mot. (Dkt. # 18).)  The court has considered

19  the motion, the parties' submissions filed in support of and opposition thereto, the

20  balance of the record, and the applicable law.  Considering itself fully advised, the court

21  GRANTS in part and DENIES in part Defendants' motion to dismiss.

22

ORDER- 1

## II.   BACKGROUND

This a dispute over an obligation secured by a deed of trust.  On or about August 15, 2000, Plaintiff Terry Bly purchased the property located at 17327 114th Place Northeast, Granite Falls, Washington 98252.  (Am. Compl. (Dkt. # 5) ¶¶ 3, 8.)  Mr. Bly claims this property has been his primary place of residence since he purchased it.  (*Id.* ¶ 8.)  At the same time he purchased the property, Mr. Bly executed and delivered a promissory note to Saxon Mortgage ("Saxon") for $75,000.  (*See* Jud. Not. (Dkt # 19) Ex. 1 at 6.)  To secure the note, Mr. Bly granted a deed of trust to Fidelity National Title ("Fidelity"), as trustee.  (Jud. Not. Ex. 2 at 9.)  Fidelity assigned the deed of trust to Bankers Trust Company, now Deutsche Bank.  (Jud. Not. Ex. 3 at 22; Am. Compl. ¶ 3.)  Presently, Deutsche Bank holds the deed of trust.  (Am. Compl. ¶ 3.)  The current servicer of the deed of trust is Ocwen.  (*Id.* ¶ 17.)

Mr. Bly has not made a payment on the note since 2001.  (*Id.* ¶ 16.)  Mr. Bly claims that Defendants took steps to enforce the obligation.  (*See id.* ¶¶ 9-12, 14-16, 21-23.)  Defendants recorded two notices of trustee's sale:  the first on February 5, 2001, and the second on January 21, 2002.  (Resp. (Dkt. # 24) Ex. 1 at 1; Resp. Ex. 2 at 4.)  On February 8, 2005, Deutsche Bank (Banker's Trust at the time) filed a complaint in Snohomish County Superior Court requesting that the court grant Deutsche Bank the ability to foreclose on Mr. Bly's property.  (Am. Compl. ¶ 12; Resp. Ex. 3.)  The state court never entered judgment in favor of Deutsche Bank, and the case was dismissed in July, 2009.  (Am. Compl. ¶ 12.)

1    After the superior court dismissed the foreclosure action, Defendants allegedly

2    took steps to lock Mr. Bly out of his home.  (*See id.* ¶ 26.)  Mr. Bly claims that Field

3    Asset Services ("Field Asset") removed all of his personal belongings and changed the

4    locks.  (*Id.*)  According to Mr. Bly, his attorney attempted to contact Field Asset twice

5    regarding the incident.  On both occasions, Field Asset was unresponsive and denied any

6    knowledge or record of the incident.  (*Id.* ¶¶ 28-30.)  Mr. Bly also claims that on October

7    22, 2013, Field Asset placed a notice on his property indicating that the property was

8    vacant.  (*Id.* ¶ 21.)  The notice indicated that the property was inspected by Field Asset

9    and that Field Asset should be contacted directly with any problems.  (*Id.* ¶ 22.)  In

10   addition, there was another notice on the inside of Mr. Bly's door indicating that the

11   house had been winterized.  (*Id.* ¶ 23.)  Mr. Bly claims that the actions of Field Asset are

12   attributable to Deutsche Bank and Ocwen under an agency theory.  (*Id.* ¶ 31.)

13   Subsequently, Mr. Bly filed this suit in Snohomish County Superior Court seeking

14   to quiet title and asserting various tort claims and a violation of the Consumer Protection

15   Act ("CPA"), RCW 19.86.  (*See* Not. (Dkt. # 1).)  Defendants removed the suit to this

16   court.  (*See id.*)  Defendants now bring a motion to dismiss for failure to state a claim

17   pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Mot.)

18                              **III.    ANALYSIS**

19   **A.    Standard For Dismissal Under Rule 12(b)(6)**

20   Federal Rule of Civil Procedure 8 sets the general requirements for pleadings.  *See*

21   Fed. R. Civ. P. 8.  Rule 8 requires that the plaintiff include three things in his or her

22   complaint:  (1) a statement of the grounds for the court's jurisdiction; (2) a short and

1    plain statement of the claim showing that the pleader is entitled to relief; and (3) a prayer

2    for relief.  Fed. R. Civ. P. 8(a).  To survive a Rule 12(b)(6) motion to dismiss under *Bell*

3    *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

4    (2009), a complaint must contain factual matter sufficient to support a facially plausible

5    claim to relief.  *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th

6    Cir. 2010) (citing *Iqbal*, 556 U.S. 662).  A claim for relief is plausible on its face when

7    "the plaintiff pleads factual content that allows the court to draw the reasonable inference

8    that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at

9    556).  Although this standard is not a probability requirement, it requires the plaintiff to

10   do more than present facts tending to show that the defendant might be liable.  *Id*.  A

11   complaint crosses the threshold from conceivable to plausible when it contains factual

12   matter alleged with sufficient specificity to raise entitlement to relief above the

13   speculative level.  *Twombly*, 550 U.S. at 555.  Otherwise stated, "the pleading standard

14   Rule 8 announces does not require detailed factual allegations, but it demands more than

15   an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678

16   (internal quotations and citations omitted).

17        "Apart from factual sufficiency, a complaint is also subject to dismissal [under

18   Rule 12(b)(6)] where it lacks a cognizable legal theory, or where the allegations on their

19   face show that relief is barred for some legal reason."  *Balistreri v. Pacifica Police Dep't*,

20   901 F.2d 696, 699 (9th Cir. 1990).  When considering a party's Rule 12(b)(6) motion to

21   dismiss, the court construes all facts in the light most favorable to non-moving party.

22   *Twombly*, 550 U.S. at 555.  However, the court is not bound to accept as true labels,

ORDER- 4

conclusions, formulaic recitations of the elements, or legal conclusions couched as factual allegations. *Id*.

When ruling on a motion to dismiss, a court may consider the complaint, documents attached to the complaint, documents incorporated by reference in the complaint, and matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. at 908. Further, the "defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss . . . ." *Id*.

**B.    Defendants' Rule 12(b)(6) Motion to Dismiss**

Mr. Bly asserts eight causes of action:  (1) quiet title; (2) trespass; (3) conversion; (4) illegal self-help forcible entry; (5) constructive eviction; (6) intentional infliction of emotional distress; (7) a CPA violation; and (8) negligence.  (Am. Compl. ¶¶ 32-49.) Defendants move to dismiss all claims pursuant to Rule 12(b)(6).  (*See* Mot.)  The court addresses each of Mr. Bly's claims in turn.

**1.  Quiet Title**

Mr. Bly brings a claim to quiet title.  Pursuant to RCW 7.28.300:

The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of

1    limitations, and, upon proof sufficient to satisfy the court, may have
2    judgment quieting title against such a lien.

3    *Id.*  The dispositive issue in making out a claim under RCW 7.28.300 is whether the six-

4    year statute of limitations governing promissory notes and deeds of trust, RCW 4.16.040,

5    has run on Defendants' ability to bring a foreclosure action.  *See* RCW 7.28.300.  The

6    statute begins to run when the amount becomes due.  *See Westar Funding, Inc. v. Sorrels*,

7    239 P.3d 1109, 1113 (Wash. Ct. App. 2010).  The full amount becomes due either upon

8    maturity of the note or if an obligation to pay in installments is fully accelerated.  *Kirsch*

9    *v. Cranberry Fin., LLC*, No. 69959-8-I, 2013 WL 6835195, at *4 (Wash. Ct. App. Dec.

10   23, 2013).

11         Defendants argue that Mr. Bly's amended complaint is silent on this issue of when

12   the obligation secured by the deed of trust was accelerated.  (Reply (Dkt. # 26) at 2.)  The

13   amended complaint, however, points the court to Defendant's 2005 foreclosure complaint

14   which states:  "plaintiff has and does exercise the option granted in the Note and Security

15   Instrument to declare the whole of the balance of both principal and interest due and

16   payable." [1] (Resp. Ex. 3 at 3.)  Thus, assuming the truth of all facts in the amended

17   complaint, the six-year statute of limitations began to run on February 7, 2005, when

18   Defendants accelerated the full amount of the obligation.  If the statute of limitations

19   started to run on that date, the last day Defendants could foreclose on the property was

20   February 7, 2011.  Accordingly, Mr. Bly pleads the necessary elements to state a claim

---

21   [1] The foreclosure complaint is incorporated by reference in Plaintiff's complaint (2d Am.
22   Compl. ¶ 12), and is a public record of which the court may take judicial notice, *see Ritchie*, 342
     F.3d at 907-08.

ORDER- 6

for quiet title under RCW 7.28.300 by alleging facts showing that the statute of

limitations has already run on Deutsche Bank's ability to foreclose.  The court denies

Defendants' motion as to this cause of action.

### 2.  Trespass

Mr. Bly brings a claim for trespass stemming from Field Asset's alleged entry

onto his property.  One is liable to another for trespass, irrespective of whether one

thereby causes harm to any legally protected interest of the other, if he intentionally

"enters land in the possession of the other, or causes a thing or a third person to do

so . . . ." *Bradley v. Am. Smelting & Ref. Co.*, 709 P.2d 782, 785 (Wash. 1985).  An entry

upon another person's land that might otherwise be wrongful, however, is not a trespass

if it is a "privileged" entry.  William B. Stoebuck & John W. Weaver, 17 WASHINGTON

PRACTICE, REAL ESTATE: TRANSACTIONS § 10.2 (2d ed.); *Camer v. TCI West*, No.

39747-8-I, 1998 WL 40664, at *2 (Wash. Ct. App. Feb. 2, 1998) (per curiam).  Thus, to

survive a motion to dismiss, Mr. Bly must allege facts showing that Defendants made an

unprivileged entry onto his property.

In Washington, a mortgage creates a lien on the property but transfers no

ownership interest.  *Kezner v. Landover Corp.*, 942 P.2d 1003, 1006 (Wash. Ct. App.

1997).  As Defendants do not have title, the crucial inquiry is whether the deed of trust

authorized Defendants' alleged entry onto Mr. Bly's property.  The deed of trust states

that if the borrower fails to make payments, then the lender "may do and pay for

whatever is necessary to protect the value of the Property and the Lender's rights in the

1  Property."[2]  (Jud. Not. at 12.)  This could include "paying any sums secured by a lien

2  which has priority over [the deed], appearing in court, paying reasonable attorneys' fees

3  and entering on the property to make repairs."  (*Id.*)  Mr. Bly argues that the right of

4  access granted in the deed is not broad enough to cover the steps Defendants took to

5  secure their interest.  (*See* Am. Compl. ¶ 33 ("Defendants' [sic] are jointly and severally

6  liable for trespass as they entered Mr. Bly's home without his permission or

7  authorization.").)  At the motion to dismiss stage, the court assumes this fact to be true.

8  *Twombly*, 550 U.S. at 555.  Therefore, Mr. Bly pleads sufficient facts to show that

9  Defendants made an unprivileged entry onto his property.  The court denies Defendants'

10  motion as to this cause of action.

11  **3.  Conversion**

12      Mr. Bly claims that Defendants' removal of his personal belongings constituted

13  conversion.  Under Washington law, conversion is the act "of willfully interfering with

14  any chattel, without lawful justification, whereby any person entitled thereto is deprived

15  of possession of it."  *PUD of Lewis Cnty. v. WPPSS*, 705 P.2d 1195, 1211 (Wash. 1985)).

16  _____

17  [2] Assuming Plaintiff's contention that the statute of limitations has run, Defendants'
   interest secured by the deed of trust is still valid despite the fact that collection of the debt may
18  be unenforceable due to the statute of limitations.  *See Fix v. Fix*, No. 43504-7-II, 2013 WL
   5311267, at *4 (Wash. Ct. App. Sept. 17, 2013) ("Statutes of limitations, as opposed to nonclaim
19  statutes, do not void interests . . . . Upon the expiration of the contract's statute of limitation, a
   deed of trust securing an obligation is voidable, not void. . . .  Thus, assuming the statute of
20  limitations applies to [Plaintiff's] claims, any interest [Plaintiff] had in the property did not
   automatically become invalid once the statute of limitations ran."); *Jordan by Prappas v.*
21  *Bergsma*, 822 P.2d 319, 320 (Wash. Ct. App. 1992) ("Although enforcement of an obligation
   may be barred by the statute of limitation, the obligation does not become void.").  Accordingly,
22  the court looks to the language of the deed to determine the scope of actions Defendants may
   utilize to enforce their interest.

ORDER- 8

1    Mr. Bly alleges that Field Asset removed all of his personal belongings from the

2    premises.  (Am. Compl. ¶¶ 22, 26.)  Further, Mr. Bly claims that the deed of trust did not

3    authorize confiscating his personal belongings, making Defendants' actions unlawful.

4    (*See id.* ¶ 36; Resp. at 13-14.)  Taking Mr. Bly's factual assertions as true, the allegation

5    that Field Asset removed Mr. Bly's personal belongings without authorization is

6    sufficient to allow the court to draw a reasonable inference that Defendants are liable for

7    conversion.  *See Shroyer*, 622 F.3d at 1041 (citing *Twombly*, 550 U.S. at 556).

8    Accordingly, the court denies Defendants' motion to dismiss Mr. Bly's conversion claim.

9         **4.  Illegal Self-Help Forcible Entry**

10        Mr. Bly claims Defendants are liable for forcible entry under RCW 59.12.010.[3]

11   To meet the statutory definition of forcible entry, Mr. Bly must allege more than mere

12   entry onto his property.  *See* RCW 59.12.010 (1).  Mr. Bly must allege sufficient facts

13   showing that the entry onto the property was gained by force, fraud, intimidation, stealth,

14   violence or circumstance of terror.  *Id.*  Mr. Bly does not plead sufficient facts to state a

15   claim under RCW 59.12.010.  Mr. Bly maintains only that Defendants unlawfully entered

16   his home.  He does not assert specific facts showing that Defendants utilized force to

17   enter the property.  (*See generally* Am. Compl.)  Therefore, the court grants Defendants'

18   motion to dismiss this cause of action.

19

20        [3] The full text of RCW 59.12.010 reads:  "Every person is guilty of a forcible entry who
21   either -- (1) By breaking open windows, doors or other parts of a house, or by fraud, intimidation
     or stealth, or by any kind of violence or circumstance of terror, enters upon or into any real
22   property; or -- (2) Who, after entering peaceably upon real property, turns out by force, threats or
     menacing conduct the party in actual possession."  RCW 59.12.010.

1

### 5.  Constructive Eviction

2     Mr. Bly asserts a claim for constructive eviction.  Under Washington law, a

3 landlord's act preventing a tenant from gaining possession of leased property constitutes

4 constructive eviction and excuses the tenant's obligation to pay rent.  *Crown Plaza Corp*.

5 *v. Synapse Software Sys., Inc.*, 962 P.2d 824, 828 (Wash. 1997).  The doctrine applies to

6 the landlord-tenant relationship.  *See* William B. Stoebuck & John W. Weaver, 17

7 WASHINGTON PRACTICE, REAL ESTATE: PROPERTY LAW § 6.32 (2d ed.) ("Instead of the

8 landlord's physically ousting the tenant, in a constructive eviction claim the landlord does

9 something he had a duty to the tenant not to do, or fails to do something he had a duty to

10 do, that causes the premises to be 'untenantable.'").  A landlord-tenant relationship is not

11 the relationship formed by a deed of trust and is not mentioned in Mr. Bly's complaint.

12 The doctrine of constructive eviction is inapplicable in this case.[4]  Accordingly, the court

13 grants Defendants' motion to dismiss this cause of action.

14

### 6.  Intentional Infliction of Emotional Distress

15     Mr. Bly brings a claim for intentional infliction of emotion distress.  In

16 Washington, intentional infliction of emotional distress constitutes the same tort as

17 outrage.  *Kloepfel v. Bokor*, 66 P.3d 630, 631 n.1 (Wash. 2003).  Outrage requires the

18 proof of three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless

19 infliction of emotional distress, and (3) actual result to plaintiff of severe emotional

20

21     [4] Mr. Bly asks the court to apply the constructive eviction doctrine outside of the
landlord-tenant relationship.  (Resp. at 16.)  Mr. Bly provides no Washington cases
countenancing such an expansion of the doctrine.  Accordingly, the court declines to expand the

22 doctrine where state courts have refused to do so.

distress." *Id.* at 632.  Any claim for intentional infliction of emotional distress must be predicated on behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotations and citations omitted). "[M]ere insults, indignities, threats, annoyances, or petty oppressions" do not constitute outrage as a plaintiff is assumed to be "hardened to a certain degree of rough language, unkindness, and lack of consideration." *Id.*

Mr. Bly's amended complaint states that Defendants illegally "broke into his home," posted "vacant" signs on his door, removed all of his personal belongings, and then denied having any knowledge of the incident despite having posted notice signs with Field Asset's contact information on the door.  (Am. Compl ¶¶ 21-22, 26-28, 30, 42-43.) As a result of Defendants' actions, Mr. Blys claims he "suffered and continues to suffer severe emotional distress" including "fear, insecurity, embarrassment and ongoing anxiety about losing his home and belongings." (*Id.* ¶¶ 42-43.)

Taking the factual allegations in the amended complaint as true, Mr. Bly sufficiently pleads the elements for the tort of outrage.  Mr. Bly alleges conduct that is sufficient to meet the first prong.  Assuming without deciding that Defendants' conduct was not permitted by the deed of trust, it is plausible that illegally entering Mr. Bly's house, taking his personal belongings, and then denying responsibility goes beyond mere "insults, indignities, threats, annoyances, or petty oppressions" and may be regarded as "utterly intolerable." *See Kloepfel*, 66 P.3d at 632.  Mr. Bly satisfies the second prong by alleging that Defendants "intentionally" entered his house and removed the items.  (Am.

1   Compl. ¶ 35.)  Mr. Bly's allegation that Defendants posted "vacant" notices on the doors

2   supports the assertion that Defendants acted intentionally.  (*See id.* ¶ 22.)  Finally, Mr.

3   Bly satisfies the third prong by pleading various forms of mental and emotional distress.[5]

4   (Am. Compl. ¶¶ 42-43.)  Taken as true, these factual assertions demonstrate that Mr. Bly

5   suffered severe emotional distress as a result of Defendants' conduct.  Mr. Bly therefore

6   pleads the requisite elements.  Accordingly, the court denies Defendants' motion to

7   dismiss Mr. Bly's intentional infliction of emotional distress claim.

8   **7.  Violation of the Consumer Protection Act**

9   Mr. Bly asserts a violation of the Consumer Protection Act (CPA).  To prevail in a

10  private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice, (2)

11  occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's

12  business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d

13  885, 889 (Wash. 2009).

14  Mr. Bly does not plead sufficient facts to meet the public interest prong.  A

15  claimant may establish that an act or practice is injurious to the public interest because it:

16  "(1) Violates a statute that incorporates [RCW 19.86]; (2) Violates a statute that contains

17  a specific legislative declaration of public interest impact; or (3)(a) Injured other persons;

18  (b) had the capacity to injure other persons; or (c) has the capacity to injure other

19  persons."  RCW 19.86.093.  Mr. Bly's amended complaint is devoid of facts addressing

20

21  _____

    [5] Mr. Bly is not required to plead objective symptomatology of emotional distress.

22  *Kloepfel*, 66 P.3d at 636.

1    the factors set out in RCW 19.86.093.  (*See generally* Am. Compl.)  Debt collection is a

2    heavily regulated field.  *Panag*, 204 P.3d at 897.  Despite the existence of public interest

3    statutes regulating debt collection practices, Mr. Bly neither alleges that Defendants

4    committed a statutory violation nor demonstrates that there is a likelihood that additional

5    plaintiffs have been or will be injured in exactly the same fashion, *see Jolley v.*

6    *Blueshield*, 220 P.3d 1264, 1272 (Wash Ct. App. 2009).  Although Mr. Bly claims he will

7    be able to prove that Defendants' actions have "the capacity to injure others" (Resp. at

8    20), the alleged ability to later prove an element of a claim is insufficient to survive a

9    motion to dismiss.  *See Twombly*, 550 U.S. at 555 (requiring that the complaint contain

10   factual matter alleged with sufficient specificity to raise entitlement to relief above the

11   speculative level).  Without facts alleged to the contrary, the court operates under the

12   assumption that "[o]rdinarily, a breach of a private contract affecting no one but the

13   parties to the contract is not an act or practice affecting the public interest."  *See Jolley*,

14   220 P.3d at 1272 (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*,

15   719 P.2d 531, 538 (Wash. 1986)).  Because Mr. Bly does not plead sufficient facts to

16   meet the public interest prong, the court need not address the remaining four elements.

17   Accordingly, the court grants Defendants' motion to dismiss Mr. Bly's CPA claim.

18   **8. Negligence**

19       Finally, Mr. Bly brings a negligence claim.  A cause of action for negligence

20   requires the plaintiff to establish:  (1) the existence of a duty owed, (2) breach of that

21   duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury.

22   *Tincani v. Inland Empire Zoological Soc.*, 875 P.2d 621, 624 (Wash. 1994).  There are

1   two elements to proximate causation: cause in fact and legal causation. *Tyner v. State*

2   *Dep't of Soc. & Health Servs., Child Protective Servs.*, 1 P.3d 1148, 1155-56 (Wash.

3   2000). Causation in fact refers to the actual, "but for," cause of the injury. *Id.* at 1156.

4   Legal causation is grounded "in policy determinations as to how far the consequences of

5   a defendant's acts should extend." *Id.* (internal quotations and citations omitted). The

6   focus in legal causation analysis is on "whether, as a matter of policy, the connection

7   between the ultimate result and the act of the defendant is too remote or insubstantial to

8   impose liability." *Id.* (internal quotations and citations omitted).

9       Mr. Bly claims that Defendants owed him "a duty to do further investigation to

10  determine whether Mr. Bly's home was actually vacated." (Am. Compl. ¶ 47.) Mr. Bly

11  alleges that Defendants breached that duty by arbitrarily determining that his home was

12  vacant and removing his belongings, thereby causing Mr. Bly damages in the form of loss

13  of his personal belongings and mental and emotional harm. (*See id.* ¶¶ 48-49.)

14      Mr. Bly pleads sufficient facts to make out a negligence claim. Defendants, as

15  holders of the deed of trust, have a duty of good faith to Mr. Bly. *See* RCW 6.24.010(4)

16  ("The trustee or successor trustee has a duty of good faith to the borrower, beneficiary,

17  and grantor."); *Bain v. Metropolitan Mortg. Group, Inc.*, 285 P.3d 34, 39 (Wash. 2012)

18  ("Trustees have obligations to all parties of the deed, including the homeowner."). Mr.

19  Bly pleads sufficient facts to show that Defendants breached that duty by entering his

20  home when it was occupied, removing his belongings, and then denying responsibility.

21  (*See* Am. Compl. ¶¶ 21-22, 26-28, 30, 42-43.) Further, Mr. Bly alleges facts showing

22

that Defendants were both the cause in fact and legal cause of his injuries. (*See id.*) Accordingly, the court denies Defendants' motion to dismiss Mr. Bly's negligence claim.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants Ocwen Loan Servicing, LLC and Deutsche Bank Trust Company's motion to dismiss (Dkt. # 18), but provides Mr. Bly leave to amend his complaint within ten days of the date of this order with respect to those causes of action that the court dismissed therein.

Dated this 2nd day of June, 2014.

JAMES L. ROBART
United States District Judge

ORDER- 15